Romeo J. Salta (RJS-2301)
Salta & Associates, P.C.
630 9th Avenue, Suite 405
New York, NY 10036
(917) 562-3347
romeosalta@mac.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
————————————————————x

STEVEN NERAYOFF,                              **Case No.**  24-cv-5077

                              Plaintiff,      **VERIFIED COMPLAINT**

                -against-


  TYLER FAYARD a/k/a "BORING SLEUTH,"

                              Defendant

-----------------------------------------------------------x


        Plaintiff STEVEN NERAYOFF ("Plaintiff" or "Mr. Nerayoff), by and through

undersigned counsel, Romeo Salta, as and for his complaint against Defendant TYLER FAYARD

a/k/a "Boring Sleuth" ("Defendant" or "Boring Sleuth") alleges as follows:

                              **NATURE OF THE ACTION**

1.        This is an action for damages arising out of Defendant's pattern and campaign to

smear Mr. Nerayoff's reputation through Defendant's intentionally making false

statements against Mr. Nerayoff in an attempt to harm Mr. Nerayoff's business

relationships, destroying his personal relationships with members of the community, and

publicly tarnishing his reputation.

2.      In the past few months, Defendant has made numerous posts on social media platform X (previously known as "Twitter") falsely accusing Mr. Nerayoff of being a criminal, extortionist, fraudster, and a government plant who insinuated himself at the government's behest into defendant's life as part of a Psy Op—Defendant going so far as to falsely claim that Mr. Nerayoff provided information on Defendant's whereabouts which allowed government operatives to carry out an assassination attempt on Defendant as he ran in a 5K race in his home town.

3.      These accusations were knowingly false and intentionally made. These social media posts have been viewed and "liked" by thousands of people. Mr. Nerayoff's reputation in the business world and the community at large has been harmed by Defendant's false and malicious claims.

4.      Mr. Nerayoff seeks damages and injunctive relief to remedy the emotional, mental, and economic harm caused by Defendant's knowingly false statements. Mr. Nerayoff was at no time a government agent or inserted into Defendant's life, or assisted in targeting him for an assassination attempt, or is an extortionist, or criminal of any kind.

5.      Notwithstanding the foregoing, for reasons only known to Defendant, he has persisted in posting defamatory statements regarding Mr. Nerayoff's activities and character despite Mr. Nerayoff's request for him to stop and warning him that he would be subjected to a civil action for defamation.

## PARTIES

6.      Plaintiff Steven Nerayoff  is a natural person who, at all relevant times, was over the age of 18 and is a citizen of New York.

7.     Defendant Tyler Fayard is a natural person who posts on the social media platform X under the pseudonym "TruthLabs." At all relevant times, Defendant was over the age of 18 and is a citizen of the State of Kansas.

## JURISDICTION AND VENUE

8.     This Court has subject matter jurisdiction over the action pursuant to 28 U.S.C. §1332 (Diversity), as Plaintiff and Defendant are citizens of different States, New York and Kansas, respectively, and as the amount of damages at issue exceeds $75,000.00 exclusive of interest and costs.

9.     This Court has personal jurisdiction over the Defendant because a substantial part of the events giving rise to this Complaint were directed towards and had an effect in New York, New York.

10.     Venue is proper in this district, pursuant to 28 U.S.C. § 1391(b)(2), as    a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## FACTS

11.     Mr. Nerayoff is an attorney, inventor and the founder and Chief Executive Officer ("CEO") of Alchemist Creations, LCC ("Alchemist"), a consultancy, accelerator and investment firm for high-potential blockchain companies and of Maple Ventures LLC ("MV"). Mr. Nerayoff holds 46 U.S. and international patents, primarily in the field of artificial intelligence, autonomous vehicles, and Smart Cities. Mr. Nerayoff, while at Ethereum, invented the "Utility Token" and a structured method for selling these new digital assets to the public in what became known as the "Initial Coin Offering" ("ICO")

and created the first "Security Token" or "Tokenization" and Security Token Offering ("STO") while at tZERO.

12.    Mr. Nerayoff's work with the Ethereum blockchain, which resulted in his invention of the Utility Token and ICO, has been publicly acknowledged in Camilla Russo's *The Infinite Machine* and Laura Shin's the *Cryptonians,* as Mr. Nerayoff's innovations allowed Ethereum and thousands of other tokens to be legally sold and traded thus allowing the Crypto arena to flourish.

13.    In September of 2019, Mr. Nerayoff was arrested by FBI agents working as part of a joint task force and charged with extortion for his work on the Storm X ICO. The warrant for Mr. Nerayoff's arrest and the resulting indictment were based on false and misleading statements which were spun into a narrative to fabricate a crime, destroy Mr. Nerayoff's business reputation and relationships, and to publicly brand him as an extortionist (*see* United States v. Nerayoff 1-20-cr-00008, EDNY).

14.    Ultimately, in March of 2023, the government moved to dismiss all charges against Mr. Nerayoff after he presented the government with incontrovertible evidence of his innocence—including video recordings he had made and emails, messages and documents <u>which were in the government's possession at least seven months before his arrest</u>. On May 5, 2023, the Hon. Margo Brodie, United States District Court Judge for the Eastern District of New York dismissed all charges against Mr. Nerayoff with prejudice.

15.    After the indictment against Mr. Nerayoff was dismissed, he began to reflect on why the government had brought the charges in the first place—charges of which he

clearly was innocent. During this time, Mr. Nerayoff realized he had documentary evidence in his own possession which established that his prosecution stemmed from the insider knowledge he possessed regarding well known individuals in the Crypto space. Subsequently Mr. Nerayoff met Defendant Tyler Fayard, a self-proclaimed blockchain analyst, who claimed to have data regarding those individuals and the two agreed to work together to prove Mr. Nerayoff's thesis.

16.    Subsequently, on that same evidence of innocence, the government also moved to dismiss the charges against Mr. Nerayoff's alleged co-conspirator, Michael Hlady, the convicted felon that had been informing to the FBI--not conspiring with Mr. Nerayoff-- during the same time he was conning Mr. Nerayoff out of hundreds of thousands of dollars through use of a false identity and confidence game. That plea was used by the government in an attempt to coerce a plea bargain from Mr. Nerayoff, notwithstanding the fact he was innocent

17.    Initially, Defendant and Plaintiff Nerayoff began to work cooperatively, with Defendant tweeting on October 20, 2023 that Plaintiff and Defendant's information complimented each other, "[y]ou really should be following what @stevennerayoff has been saying. I say this because Steven has what I lacked, and I have what Steven has lacked."

18.    Although Plaintiff thought that Defendant shared his goal of exposing the fraud that was the motive behind his malicious prosecution, at some point in the spring of 2024, Plaintiff noticed a change in Defendant's behavior towards him.

19.     On May 29, 2024, Defendant Fayard, using the pseudonym, "TruthLabs," publicly posted to his thirty thousand plus followers on the social media platform X:

"Two days after I tweeted the below Tweet about Peter Pablo, an assassination attempt on me took place while running in a Marathon. I only told one other person, @StevenNerayoff, that I would be running in that Marathon.  This is something I documented, as I did with all our conversations, thankfully in real time.  Steven just happens to have a relationship with Peter Pablo, the person I tweeted that about two days prior to the assassination attempt."

20.     On May 29, 2024, "TruthLabs" publicly posted on the social media platform X:

"the blockchain evidence with Steven and StormX certainly doesn't match the FBI and Steven's story, including Hlady."

21.     On May 31, 2024, "TruthLabs" publicly repeated his claim that Mr. Nerayoff was involved in the alleged assassination attempt against him by posting on the social media platform X:

"I never once stated that @stevennerayoff tried to assassinate me, nor was that my intention.  Steven never once asked me to remove the tweet, nor did he explain how it was wrong."

22.     On June 4, 2024, "TruthLabs" publicly posted on the social media platform X suggesting the charges against Mr. Nerayoff were dismissed because he agreed to work with the government and infiltrate TruthLabs to steal his work and use it to file a whistleblower report:

"One main reason to infiltrate the sleuths working on ETHGATE, would be to steal their work, file a whistleblower report, which is kept 100% anonymous, and keep the earnings, providing liquidity to a project you promised equity in.     Stevie told me I would be included in these, and that he already filed some, and was working with the @EMPOWR_us. Later, he reneged and told me he didn't file any. I won't get into speculating the sudden dropping of his charges, in relation to this, nor the arrest of close on-chain business associates with him, but I do wonder…is there more to this? If so, what agencies took part in this, and what promises were made?"

23.     Later on June 4, 2024, TruthLabs" publicly posted on the social media platform

X"

"We've been hard at work since last week, as the negative valence left us as motivated as ever.   While we owe you a trip across the Bridge to Gox, we must first settle some business with some old acquaintances.   A Riddle: "After a brief Storm it became clear as Day. We headed to Israel stopped in New York, always, and finally to Chicago to see Alice." They never learn from their mistakes. Underestimated once more."

24.     This tweet caused a follower of TruthLabs to reply tweet:

"Show Steven took the ETH tokens he claimed he hasn't, need to stop anyone else

For falling into his words and especially if he wants other to buy into his new project

(Folded Hands Prayer emoji)."

25.     On June 7, 2024, "TruthLabs" publicly posted on the social media platform X:

"What if I told you, that Stevie's 10K $ETH he got from StormX's "loan" or previously accused "extortion" are sent to one of the owners below, tied directly to this DARK MONEY trail? It's true."

26.     On June 10, 2024, "TruthLabs" publicly posted on the social media platform X:

"When I say something, I mean something.  Proof that my Infiltrator, Stevie, was
 Connected to the corrupt Mt. Gox Agents Wallet, as well as Smart Contracts
Japan, and the earlies Fake Phising Wallets on Ethereum.   This is just a tease though, Alice, as there is so much more."

27.     On June 13, 2024, "TruthLabs" publicly posted on the social media platform X:

"When looking into the 10K $ETH extortion wallet, in which the @FBI accused @StevenNerayoff of extoring StormX, I noticed something that stood out to me:
Steven sent exactly 1,773.76 $ETH to one wallet, why did this stand out?" and retweeted a May 2, 2024 X post "What if the take down of American Agencies was a "pre-meditated, pre-"plant" plan" (PPPP…) by the Globalist agenda? In which case we are seeing it play out in front of our eyes…"

28.     On June 17, 2024, "TruthLabs" publicly tweeted on the social media platform X:

"Anyone heard from Steven or have they written off his Psyop as one of the greatest fk ups of all time?"

29.     Also on June 17, 2024, in response to a comment by another user, "TruthLabs" posted on the social media platform X:

"Steven is a coward and inhumane fraud.   He's like a human version of a vulture. He literally exposed nothing true."

30.     On June 22, 2024, "TruthLabs" posted to the social media platform X:

"Let the Steven Nerayoff@stevennereayoff infiltration show to you that no matter what, the narrative, and the storytelling is something they will always attempt to control, thru their own people. They will do anything they can to control the narrative, and they don't stop at just infiltration on a Social Media account…"

### AS FOR A FIRST CAUSE OF ACTION DEFAMATION-LIBEL *PER SE*

31.     Plaintiff repeats and re-alleges each and every allegation in the preceding paragraphs (1-29) as if set forth at length herein.

32.     Under New York Law a cause of action for defamation requires the following elements: "(1) a false statement that is (2) published to a third party (3) without privilege or authorization, and that (4) causes harm," unless the statement is defamatory per se, in which case harm is presumed." *Goldman v. Reddington,* 417 F.Supp.3d 163, 171 (EDNY 2019).

33.     Defamatory words expressed in writing are libel and this includes social media posts. *Goldman v. Reddington,* 417 F.Supp.3d 163, 171 (EDNY 2019).

34.     A statement constitutes libel *per se* if it tends to expose the plaintiff to public contempt, ridicule, aversion or disgrace, or induce an evil opinion of him in the minds of

right thinking people. *D'Amico v. Correctional Medical Care, Inc.,* 120 A.D.3d 956, 962 (4th Dept. 2014).

35.     Libel *per se* includes "a statement that suggests improper performance of one's professional duties," or "[r]eputational injury to a person's business ... that either imputes some form of fraud or misconduct or general unfitness, incapacity, or inability to perform one's duties." *Jacobus,* 55 Misc. 3d at 480 (citations omitted). Libel *per se* also includes "a false report accusing the plaintiff of a serious crime." *D'Amico,* 120 A.D.3d at 963. Similarly, words constitute defamation *per se* if they falsely impute to the Plaintiff criminal activity. *AngioMedical Corp. v. Eli Lilly & Co.,* 720 F. Supp. 269,272 (S.D.N.Y. 1989).

36.     As described in the preceding paragraphs, Defendant made false, libelous statements concerning Mr. Nerayoff.

37.     As described in the preceding paragraphs, the statements by Defendant were published to various third parties, including the general public via social media platforms.

38.     Defendant had no authorization or applicable privilege at law that permitted him to make the aforementioned defamatory statements.  Copies of a sample of the posts are annexed hereto as **Exhibit A** and made a part hereof.

39.     Defendant's statements were defamatory *per se*, because "a false statement constitutes defamation *per se* when it charges another with a serious crime or tends to injure another in his or her trade, business, or profession.~' *Geraci v. Probst*, 61 A.D.3d 717, 718 (2d Dep't 2009); see also *Jacobus*, 55 Misc. 3d at 480 (citations omitted); see also *White,* 28 A.D.3d at 724.

40.     Defendant's statements were also defamatory *per se* because they falsely accused Plaintiff criminal activity.  *Angio-Medical Corp.,* 720 F. Supp. at 272.

41.     Plaintiff is not required to establish harm and it is presumed because Defendant's statements were defamatory per se. *See Jacobus*, 55 Misc. 3d at 474.

42.     By way of examples, following Defendant's false statements and posts, numerous people have posted online posts that Mr. Nerayoff is a "rapist" and "should be off the streets." Based on Defendant's fabricated statements, these people falsely believe Mr. Nerayoff is a Criminal.

43.     As a result of Defendant's wrongful conduct, Mr. Nerayoff has been damaged in an amount to be determined at trial, but not less than $10,000,000.00 for each libelous act.

## JURY DEMAND

**Plaintiff hereby demands a trial by jury on all issues so triable.**


**WHEREFORE,** Plaintiff prays for judgment and relief as follows:

a.     A Temporary, preliminary and permanent injunction against Defendant enjoining him from committing the wrongdoing against Plaintiff complained of in this action;

b.     An award of actual, compensatory and consequential damages against Defendant for all damages Plaintiff sustained as a result of Defendant's conduct, in an amount to be determined at trial, not less than $10,000,000 per occurrence, together with prejudgment and post judgment interest thereon;

c.      An award of punitive damages against Defendant in an amount to be determined

at trial, but not less than $10,000,000.00;

d.      An award of reasonable attorney's fees;

e.      An award of costs of this action; and such other and further relief as this Court

may deem just and proper.

Dated:  July 20, 2024                              Respectfully submitted,

                                                  _____

                                                  Romeo Salta, Esq.
                                                  Salta & Associates, P.C.

**VERIFICATION**

Romeo Salta, an attorney duly licensed to practice law in the courts of the State of New York and the District Court for the Eastern District of New York, states that he is the attorney for the Plaintiff in this action and that the allegations in the foregoing Complaint are true to his own knowledge, except as to matters therein stated on information and belief and as to those matters he believes them to be true; that the grounds of his belief as to all matters not stated upon his knowledge are correspondence and other writings furnished to him by the Plaintiff and interviews with the Plaintiff; and that the reason why the verification is not made by the Plaintiff is that the Plaintiff is domiciled in Nassau County and the attorney's office is in New York County.

Dated: July 20, 2024

_____

Romeo Salta